TRACY L. WILKISON
Acting United States Attorney
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
BENJAMIN J. WEIR (Cal. Bar No. 312418)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6228
     Facsimile: (951) 276-6202
     E-mail:    Benjamin.Weir@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 20-00147-JFW |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING POSITION |
| v. | |
| ROBERT CHARLES SNEED, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Benjamin J. Weir, hereby files its Sentencing Position.

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

///

The government reserves the right to file a response to any sentencing position filed or submitted by defendant and to file any supplemental sentencing position(s) that may be necessary.

Dated: October 5, 2021　　　　　　Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office

/s/ Benjamin J. Weir
BENJAMIN J. WEIR
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Robert Charles Sneed ("defendant") has pleaded guilty to a violation of 18 U.S.C. § 641 (Theft of Government Property in Excess of $1,000). The United States Probation and Pretrial Services Office ("PPSO") has issued a Recommendation Letter and a Presentence Report ("PSR") (Dkts. 43 & 44). The PPSO finds a total offense level of 10 and a criminal history category of I, resulting in a guidelines range of 6 to 12 months' imprisonment. The PPSO recommends a below-guidelines sentence of 3-years' probation that includes a six-month period of home detention as a term of probation, and restitution of $41,027.58.

As discussed below, the United States agrees with the PPSO's offense level and criminal history calculations, as well as the recommended sentence.

**II.   BACKGROUND**

   **A.   FACTUAL AND PROCEDURAL HISTORY**

On August 12, 2020, the grand jury returned an indictment that alleged eighteen violations of 18 U.S.C. § 641 (Theft of Government Property) and one violation of 18 U.S.C. § 287 (Making False or Fraudulent Claim Against the United States). (Dkt 1.) A plea agreement was filed on July 1, 2021 wherein defendant admitted to a single violation of 18 U.S.C. § 641. (Dkt. 35.) Defendant pleaded guilty on July 9, 2021. (Dkt. 42.)

During the change of plea hearing, and in the factual basis of the plea agreement, defendant admitted that:

In late 2015, in Riverside County, California, defendant began the process of applying for residential mortgage assistance benefits

through Keep Your Home California ("KYHC").  KYHC was administered by the California Housing Finance Agency ("CalHFA") and its mortgage assistance sub-agency, CalHFA Mortgage Assistance Corporation ("CalHFA MAC").  KYHC was funded by the United States Department of the Treasury with federal funds.

Specifically, defendant applied to KYHC's Unemployment Mortgage Assistance Program ("UMA").  UMA provided temporary residential mortgage assistance to eligible low- to moderate-income homeowners who had suffered involuntary unemployment.

KYHC approved defendant's UMA application on February 17, 2016.  To finalize the benefit award, on February 22, 2016, defendant executed an affidavit (the "Final Unemployment Affidavit") in Riverside County, (1) certifying under penalty of perjury that he was unemployed at that time, and (2) acknowledging that the Final Unemployment Affidavit would be relied upon in determining UMA eligibility.  By executing the Final Unemployment Affidavit, defendant acknowledged and agreed that he was required to notify KYHC within 10 days of becoming employed and that failure to notify KYHC of changes in his employment status could constitute a violation of federal or state law.  Defendant faxed the Final Unemployment Affidavit to KYHC on February 24, 2016.

On that Final Unemployment Affidavit, defendant certified under penalty of perjury that he was unemployed when, as defendant well knew, defendant was in fact employed.  By submitting the false and fraudulent UMA application and the Final Unemployment Affidavit to KYHC, defendant was in fact presenting a false, fictitious, and fraudulent claim to the United States Department of Treasury, which funded KYHC.  Defendant knew that his claim of being unemployed, as

certified in the Final Unemployment Affidavit, was false, fictitious, and fraudulent. Nevertheless, he submitted the Final Unemployment Affidavit intending to receive benefits that he knew he was not entitled to.

In reliance on defendant's UMA application and Final Unemployment Affidavit, KYHC approved defendant's participation in CalHFA's mortgage assistance benefits program, and CalHFA made payments totaling $41,027.58 to defendant's residential loan servicer from March 4, 2016 through July 28, 2017, for a total of 18 monthly payments of $2,279.31 each. The $41,027.78 benefit that defendant received from CalHFA had been funded by the United States Department of the Treasury with federal funds. Defendant was employed throughout this period, during which he received the 18 monthly payments of $2,279.31, but did not report his employment to KYHC as he was required to.

In late 2017, after his CAlHFA mortgage assistance benefits stopped, defendant became delinquent on his residential mortgage payments. In order to delay foreclosure on his home, defendant deeded the home to his 18-year-old stepson, D.R.B. Defendant then asked D.R.B. to file for Chapter 13 bankruptcy in the United States Bankruptcy Court in Riverside, California. D.R.B. thereafter filed a bankruptcy petition.

**III. SENTENCING GUIDELINES CALCULATION**

The PPSO has determined that defendant has a total offense level of 10. (PSR ¶ 45.) This is calculated as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss exceeded $40,000 | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1[1] |
| Total Offense Level | 10 | |

(PSR ¶¶25-39.)  The PPSO also determined that defendant has zero criminal history points, which results in a Criminal History Category I.  (PSR ¶¶ 37-41.)  The government concurs with the PPSO's offense level calculation and the criminal history category.  Based upon a total offense level of 10 and criminal history category I, the advisory Sentencing Guidelines range is six to twelve months' imprisonment.

The Probation Officer recommended a three year term of probation, which would include six months in a home detention program, and restitution of $41,027.58.  (Dkt 43.)  Based on the facts and circumstances of this case, the government concurs with the Probation Officer's recommendation.

**IV.   THE UNITED STATES' POSITION REGARDING THE APPRPORIATE SENTENCE**

A sentence of three years' probation that would include a term of six months of home detention, restitution of $41,027.58, and a mandatory special assessment of $100, is appropriate in light of the factors listed under 18 U.S.C. § 3553(a).

    **A.   THE RECOMMENDED SENTENCE IS REASONABLE GIVEN THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Defendant engaged in a longstanding financial fraud against the

---

[1] Defendant is not entitled to a further one-point reduction under U.S.S.G. § 3E1.1(b) because the offense level is not greater than 16.

4

government. He submitted a fraudulent application, and then reaped the monthly benefit, to which he was not legally entitled, for 18 months thereafter. Additionally, defendant admitted in his plea agreement that he engaged in various actions to delay a bank foreclosure on his home. He has thus shown repeated efforts to engage in financial fraud.[2]

In mitigation, defendant entered into a plea agreement well in advance of trial. Further, he has no criminal history, the financial loss attributable to the fraud was not excessive, and he has various health concerns. (PSR ¶¶ 56-62.)

### B. THE RECOMMENDED SENTENCE IS NECESSARY TO REFLECT THE SERIOUSNESS OF DEFENDANT'S CONDUCT AND TO DETER DEFENDANT AND OTHERS FROM FUTURE CRIMINAL CONDUCT

Defendant engaged in an ongoing scheme to defraud the government. This fraud was serious as he received money that was designed to help those in financial need due to unemployment; defendant knowingly did not meet this requirement, yet he applied for and received the benefits nonetheless. The seriousness of this crime, albeit of a dollar amount lesser than what this court often sees, warrants a three year term of probation that includes a period of home detention equivalent to the low-end guideline imprisonment range.

The United States does not seek a term of imprisonment in this matter due to defendant's lack of criminal history, his health concerns, and the magnitude of the financial loss. Put simply, justice can be served in this case by probation and home detention.

---

[2] The United States brings up this fact solely as support for why its request for a period of home detention as part of defendant's probation is appropriate under the Section 3553 analysis.

C.   **RESTITUTION**

Defendant's plea agreement provides that he make full restitution for the fraud that he committed.  (Dkt 35 ¶7.)  Further, 18 U.S.C. § 3663A makes restitution mandatory in this case. Restitution to the U.S. Department of Treasury in the amount of $41,027.58 should be awarded.

**V.   CONCLUSION**

The United States respectfully recommends that the Court impose a sentence of three years probation with a six month term of home detention, award restitution of $41,027.58 to the U.S. Department of Treasury, and a mandatory special assessment of $100.